UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHNY QUINONEZ-BELTRAN,<br><br>Defendant. | Case No. 1:20-cr-00042-BLW-1<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

On September 23, 2020, Defendant Johny Quinonez-Beltran entered a plea of guilty to all counts of a four count Indictment that charged him with three counts of distribution of cocaine in violation (Counts One through Three), and one count of possession with the Intent to Distribute Cocaine (Count Four) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On February 2, 2021, the Court sentenced Defendant to a term of imprisonment of twelve months and one day on each of Counts One through Four, to be served concurrently. Defendant has filed a notice of appeal from that sentence. Defendant has also filed a motion for release from custody pending appeal (Dkt. 49) which is currently before the Court. For the

reasons discussed below, the Court denies the motion.[1]

## BACKGROUND

The presentence report, to which Defendant did not file any objections and which the Court adopted, sets forth the following offense conduct:

> On or about October 3, 2019, agents contacted the defendant and met with him to arrange future purchases of cocaine. The parties met and began discussing pricing of the cocaine. The defendant informed agents he wanted $1,500 per ounce but would see about a price break for anything over a quarter kilo. The defendant then provided agents with a free sample of 1.15 grams of suspected cocaine. The suspected cocaine field-tested positive for cocaine. Laboratory analysis confirmed the substance was positive for cocaine, with a tested weight of .73 grams.
>
> On or about October 10, 2019, agents contacted the defendant to purchase two ounces of cocaine. The parties met and the agent gave the defendant $2,800, in exchange for 56.5 grams of suspected cocaine. The suspected cocaine field-tested positive for cocaine. Laboratory analysis confirmed the substance was positive for cocaine, with a tested weight of 54.69 grams.
>
> On or about December 4, 2019, agents contacted the defendant to purchase two ounces of cocaine. The parties met and the agent gave the defendant $2,800, in exchange for 57.79 grams of suspected cocaine. The agent asked the defendant if he could get him some methamphetamine. The defendant indicated he did not have any methamphetamine and told the agent nobody likes selling methamphetamine because the penalties are way higher. The suspected cocaine field-tested positive for cocaine. Laboratory analysis confirmed the substance was positive for cocaine, with a

---

[1] The Court finds the Motion for Release Pending Appeal to be appropriate for decision without a hearing.

> tested weight of 55.17 grams.
>
> On or about February 5, 2020, agents contacted the defendant to purchase four ounces of cocaine and asked if they could get a price break. The defendant advised he would have to ask about the price break and would call him back. The defendant called the agent back and advised the last time the agent purchased cocaine from him it was $1,400 per ounce but this time it would be $1,300 per ounce. The agent advised that $1,300 an ounce would work, and they arranged to meet on February 6, 2020.
>
> On February 6, 2020, the agent contacted the defendant to set up a meeting. The defendant drove to the arranged location and agents arrested him. A pat-down of the defendant produced four ounces of suspected cocaine in his jacket pocket. The defendant informed agents he had messed up and had obtained the drugs from an unknown individual a few weeks ago at a dance place. When agents asked to look at his phone, the defendant told them he would like a lawyer present. The suspected cocaine weighed 115.3 grams and field-tested positive for cocaine. Two ounces of the substance was analyzed by the laboratory and was confirmed positive for cocaine, with a tested weight of 55.17 grams. The two remaining ounces of cocaine seized on that date were not laboratory tested.

(Dkt. 43 at 4 (paragraph numbering omitted).

On February 12, 2020, a four-count Indictment was returned charging Defendant with three counts of distribution of cocaine and one count of possession with the Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On September 23, 2020, Defendant entered a plea of guilty to all four counts in the Indictment without a plea agreement.

Prior to sentencing, Defendant filed a motion for mitigating role adjustment

(Dkt. 46). Defendant argued that the facts showed that Defendant played a minor role in the offense because Defendant (1) did not initiate any drug sale; (2) did not manage drug supply chains or maintain a drug stash, and (3) did not set price, take a cut of profits, or understand the scope or structure of his supplier's drug-distribution scheme. The defense requested that the Court grant a 2 level minor role downward adjustment under U.S.S.G. § 3B1.2. (Dkt. 46.) Defendant requested that the Court impose a sentence of time served, which, at the time of sentencing, was approximately six weeks.

At the sentencing hearing, after hearing the arguments from the parties, the Court denied Defendant's request for a minimal role adjustment, determined the guideline range to be twelve to eighteen months, and sentenced Defendant to a term of imprisonment of twelve months and one day on each of the four counts of conviction, to be served concurrently. Defendant has filed a notice of appeal and seeks release pending the appeal.

## LEGAL STANDARD

A person convicted of a federal crime and sentenced to prison must be ordered detained pending appeal unless he demonstrates by clear and convincing evidence that he is "not likely to flee or pose a danger to the safety of any other person or the community if released"; and "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal, an

order for a new trial, a non-custodial sentence, or "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1).

The term "substantial" "defines the level of merit required in the question presented," and a "substantial question is one that is fairly debatable or fairly doubtful; it is one of more substance than would be necessary to a finding that it was not frivolous." *United States v. Montoya*, 908 F.2d 450, 450 (9th Cir. 1990) (internal quotation marks and citations omitted).

Notwithstanding the foregoing, the Court must detain a defendant convicted of an offense described in 18 U.S.C. § 3142(f)(1)(A), (B), or (C), *see* 18 U.S.C. § 3143(b)(2), unless the defendant clearly demonstrates that there are exceptional circumstances making his detention pending resolution of his appeal unreasonable, *see* 18 U.S.C. § 3145(c).

## ANALYSIS

### A. Defendant is subject to mandatory detention and has not demonstrated exceptional reasons why his detention would not be appropriate.

Defendant was convicted of crimes within the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, which are punishable by a maximum term of imprisonment of 20 years, *see* 21 U.S.C. § 841(b)(1)(C). Accordingly, the Court must detain Defendant pending appeal, *see* 18 U.S.C.§§ 3142(f)(1)(C), 3143(b)(2), unless

Defendant clearly demonstrates that there are exceptional circumstances why his detention would not be appropriate, *see* 18 U.S.C. § 3145(c).

"[A] wide range of factors may bear upon the analysis" of whether a defendant has clearly shown "exceptional circumstances," and the court has broad discretion "to consider all the particular circumstances of the case before it and draw upon its broad 'experience with the mainsprings of human conduct.' " *United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003) (citation and quotation marks omitted). "[T]he court should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal." *Id.* at 1019.

Defendant contends that he has met this standard because (1) the Court imposed a relatively short sentence and detention would destroy the available appellate remedy, and (2) there are unique hardships associated with prison.

### 1. The length of Defendant's sentence does not demonstrate exceptional circumstances.

"The length of the prison sentence—both the maximum and the sentence imposed—may [] be relevant" to the exceptional circumstances determination for several reasons.

> First, the length of the sentence may be a proxy for the seriousness of the crime. Second, the primary purpose of the Mandatory Detention

> Act—to incapacitate [certain drug offenders]—is only weakly implicated where the sentence imposed is very short, because regardless of whether the defendant is released pending appeal, he will soon be free. Third, in such circumstance, the defendant could be forced to serve most or all of his sentence before his appeal has been decided. Incarcerating such a defendant immediately upon conviction could substantially diminish the benefit he would ordinarily receive from an appeal.

*Garcia*, 340 F.3d at 1019 (citation omitted).

Here, the maximum term of incarceration is 20 years for each of Defendant's convictions, demonstrating the seriousness of Defendant's conduct of distribution of cocaine on three separate occasions, and possession with intent to distribute cocaine on a fourth occasion.

As to the length of the sentence imposed., the Court applied the safety valve provision of 18 U.S.C. § (f)(1)-(5) and U.S.S.G. § 5C1.2 to reduce Defendant's offense level, resulting in a guideline range of twelve to eighteen months, and imposed a sentence at the bottom of the sentencing range of twelve months and one day. Thus, Defendants' sentence is relatively short.

The Court recognizes Defendant's role in the offenses for which he was convicted, and that he is a nonviolent, low-level drug dealer. However, Defendant engaged in four different transactions during which he distributed, or possessed with intent to distribute, cocaine. Further, as discussed at sentencing, Defendant was sophisticated enough in the ways of drug dealing to respond, when asked by

the undercover agent whether he could supply methamphetamine, that he did not have any methamphetamine and that nobody likes selling methamphetamine because the penalties are way higher.

The Court also recognizes that because of the length of Defendant's sentence, he could be forced to serve most or all of his sentence before his appeal is decided, and that this could substantially diminish the benefit he would ordinarily receive from an appeal. Further, the Court recognizes that Defendant complied with pretrial and presentence release conditions. However, the Court does not find that these factors, nor the role Defendant played in the offense, constitute exceptional circumstances making it unreasonable to incarcerate Defendant prior to the resolution of his appeal.

### 2. COVID-19 in the Ada County Jail does not demonstrate exceptional circumstances.

Another factor that a district court might consider in determining whether a defendant has demonstrated exceptional circumstances is whether there are "circumstances that would render the hardships of prison unusually harsh for a particular defendant. Chief among such circumstances is a sufficiently serious illness or injury." *Garcia,* 340 F.3d at 1019.

Here, Defendant contends that the inherent risks of the jail setting during COVID-19 is an exceptional reason for permitting Defendant to stay out of

custody pending appeal. Defendant has not, however, indicated that he has any condition that constitutes a risk factor that places him at higher risk if infected by COVID-19 or that may impact his recovery from that condition. Instead, Defendant cites information regarding COVID infections at the Ada County Jail, where he is currently detained on a federal hold pending his transfer to a federal prison.

According to the Ada County Sheriff's Office, as of February 9, 2021, the Ada County Jail has had 430 positive tests for COVID since July 2020, and 425 of those 430 inmates have either made it through the quarantine period or have been released. *See* https://adacounty.id.gov/sheriff/news/update-the-ada-county-jail-has-had-430-positive-tests-for-covid-19-in-the-inmate-population/ (last accessed on Feb. 10, 2021). Thus, as of February 9, 2021, there were only 5 inmates at the jail with active COVID-19. The jail also has precautions in place that have evolved over time to reduce the risk of inmate infection. *See id.* Further, as the Court noted at sentencing, Defendant is unlikely to be detained for a lengthy period of time at the jail and is likely to soon be transported to prison.

At Defendant's request, the Court has recommended to the Bureau of Prisons (BOP) that Defendant be placed at FDC SeaTac. Although this is not binding on the BOP, the Court notes that as of February 9, 2021, FDC SeaTac

listed only two inmates and five staff with active COVID-19. *See* https://www.bop.gov/coronavirus/ (last accessed Feb. 9, 2021). Under these circumstances, the Court does not find the existence of COVID-19 cases at the Ada County Jail (or at FDC SeaTac or other BOP facility) to constitute exceptional circumstances making it unreasonable to incarcerate Defendant prior to the resolution of his appeal.

Defendant has not clearly demonstrated that exceptional circumstances exist making his detention unreasonable. Accordingly, the Court finds that Defendant does not qualify for an exception to mandatory detention and must therefore be detained. However, even if the Court were to find that Defendant clearly demonstrated exceptional circumstances, and that he therefore qualifies for the exception to mandatory detention, the Court finds that Defendant does not qualify for release pending appeal under § 3143(b).

**B.     Defendant does not qualify for release pending appeal under § 3143(b).**

As noted above, to qualify for release pending appeal, a defendant must demonstrate by clear and convincing evidence that (1) he is not likely to flee or pose a danger to the safety of any person or the community if released, (2) the appeal is not for the purpose of delay, and (3) the appeal raises a substantial question of law or fact likely to result in reversal, "an order for a new trial," "a

sentence that does not include a term of imprisonment," or "a reduced sentence to a term of imprisonment less than the total time already served plus the expected duration of the appeal process." 18 US.C. § 3143(b). The Court does not find that the appeal is for the purpose of delay. The Court will thus turn to whether Defendant is a flight risk or danger to the community and whether the appeal raises a substantial question of law or fact likely to result in reversal.

### 1. Defendant is not a flight risk or danger to the community.

On the threshold issue of flight risk and danger to the community, the Court finds that Defendant is neither a flight risk nor a danger to the community.

The Court has some concerns regarding Defendant as a flight risk given that he is not a U.S. Citizen, is in this country illegally and has or will have removal proceedings pending, and his family has already left for Mexico. However, Defendant was on pretrial and presentence release and complied with the conditions of release. He does not have any failures to appear for court in his criminal history. He has a supportive mother who lives in the United States. And, he has apparently managed his drug addiction while on pretrial and presentence release. The Court finds that that totality of these circumstances show that Defendant is not a flight risk. Moreover, there is no indication that he is a risk to the community.

## 2. Defendant does not present a substantial question of law or fact likely to result in reversal on appeal.

Defendant states that his appeal will present the following issues, which he contends present a substantial question of law or fact likely to result in reversal on appeal: (1) denial of his motion for a minor role adjustment, and (2) procedural error in imposing the twelve month and one day sentence.

### a. *The denial of the motion for minor role adjustment does not raise a substantial question likely to result in reversal.*

Defendant argues that the Court's denial of his motion for a minor role adjustment raises a substantial question of law or fact likely to result in reveral on appeal.

The sentencing guidelines direct the Court to decrease a defendant's offense level by 2 levels "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). The application notes to § 3B1.2 state that a defendant who is accountable "only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline." Application Note 3(A). Thus, for example, "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline."

*Id.*

Here, Defendant argued that he was entitled to a minor role adjustment because he did not know where his supplier obtained the drugs, that there was a larger criminal scheme out there about which Defendant was relatively ignorant, and that Defendant thus did not understand the scope and structure of the criminal activity in which he was involved. The defense also argued that Defendant was simply being used by his drug dealer to sell drugs, and that Defendant sold drugs purely to sustain his drug addiction.

As the Court discussed during sentencing, the only criminal activity at issue here is Defendant's own distribution. He is being held responsible only for the quantities of cocaine that he himself directly sold and distributed, and he has 100% knowledge of that scheme. He arranged the sales, including the amounts of cocaine to be sold; he negotiated the price, although it does appear that he was checking in with his supplier in doing so; he went to the controlled buys and made the deliveries; he received payment for the sales; and he presumably used that money to pay his supplier.

The Court found, based on the facts before it, that Defendant did not qualify for an adjustment based on mitigating role in the offense. As the Court explained, if it were to apply the mitigating role adjustment in a case such as the present case,

the exception would basically swallow the rule. The Court found Defendant to be the prototypical garden variety drug dealer who obtained drugs from a supplier, sought out and then sold the drugs to individuals that he nurtured as customers, received their money, and presumably used that money to pay his supplier. Although Defendant may have sought pricing recommendations from his supplier, there is no indication that the prices were negotiated by the supplier.

The Court recognized that there are circumstances where a minor role in the offense is appropriate even where the defendant is directly involved in the drug transaction, such as when a defendant is making a drop-off of drugs on behalf of the actual seller, is providing translation services for a negotiation, is providing security, or is otherwise playing some minor role which unlike what Defendant did. The Court found the minor role adjustment to be inappropriate under the circumstances of this case and therefore rejected Defendant's request for that adjustment.

Defendant argues that a reasonable jurist could find that the Court erred in denying the minor role adjustment, citing three separate grounds. First, Defendant contends that the Court erred in determining that his role as a street-level dealer meant he was ineligible for the minor-role adjustment. However, as noted above, the Court found not only that Defendant was a street-level dealer, but also that

Defendant arranged the sales and the amounts of cocaine to be sold; he negotiated the price, although it does appear that he was checking in with his supplier in doing so; he went to the controlled buys and made the deliveries; and he received payment for the sales, which he presumably used to pay his supplier. Further, the Court noted that the only criminal activity at issue here is Defendant's own drug transactions. The Court found, based on the entirety of Defendant's conduct, that a minor role adjustment was not appropriate. This determination does not raise a substantial question of law or fact likely to be reversed on appeal.

Second, Defendant contends that the Court factually erred because it described Defendant as involved in price negotiations. However, as discussed above, the Court noted during the sentencing hearing that Defendant appeared to confer with his supplier regarding price and may have sought out pricing recommendations from the supplier when negotiating a price with the buyers, but that there is no indication that the prices were actually negotiated by the supplier rather than by Defendant. This factual finding does not raise a substantial question likely to be reversed on appeal.

Finally, Defendant contends that the Court factually erred by finding that Defendant acted for profit. Defendant argues that both parties agreed he did not act for profit and instead merely sold drugs in exchange for personal use amounts of

cocaine to feed his addiction. However, the Court did not find that Defendant acted for profit. Instead, the Court found that Defendant received the proceeds from the sales himself, and that he presumably used those proceeds to pay back his supplier. This factual finding does not raise a substantial question likely to be reversed on appeal.

> b. *The Court did not find that Defendant sold drugs because he needed the money.*

Finally, Defendant argues that the Court committed procedural error when it sentenced Defendant because the Court based its sentence on an erroneous impression that Defendant sold drugs because he needed the money. The Court made no such finding and thus this does not raise a substantial issue likely to be reversed on appeal.

## ORDER

**IT IS ORDERED** that Defendant's Motion for Release Pending Appeal (Dkt. 49) is **DENIED**.

DATED: February 11, 2021

B. Lynn Winmill
U.S. District Court Judge